THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL LOPEZ *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 77-1599, 78-150 cons.

Opinion filed May 29, 1979.

James Geis, of Geis and Geis, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On June 3, 1976, Paul Lopez, Gerald Lopez, and Mitchell King were charged with the attempt murder and aggravated battery of George Rodriquez and Efrain Burgos. Mitchell King pled guilty to the aggravated battery charge and received a sentence of 2 to 6 years in the Illinois State Penitentiary. Following a jury trial, Paul Lopez and Gerald Lopez, identical twins, were found guilty on two counts of attempt murder, as well as aggravated battery. The trial court entered judgment on these verdicts and sentenced both defendants on the attempt murder conviction to concurrent terms of 15 to 45 years in the Illinois State Penitentiary. The trial court imposed no sentence on the aggravated battery judgments.

At the time of the above offense, Paul Lopez was on probation for burglary. Due to the above convictions his probation was revoked and a sentence of 1 to 3 years was imposed on the burglary. This sentence was to be served concurrently with the sentence received for attempt murder.

Both defendants now appeal from the judgments entered on the attempt murder convictions. Paul Lopez also appeals from an order revoking his probation. The two appeals have been consolidated in this court.

We reverse.

Defendants raise numerous contentions of error in this appeal. Due to our disposition of this appeal we need consider only one of those contentions, namely, defendants' argument that the prosecution did not present enough evidence to prove either defendant guilty beyond a reasonable doubt. Defendants contend that the evidence fails to show which defendant actually fired the gun and which defendant was held

accountable for those actions. In response to this contention the State counters that the evidence presented clearly showed that both twins were acting in pursuit of a common purpose and therefore each defendant was responsible for the acts of the other.

The testimony of the witnesses called by the State revealed that at approximately 7:30 p.m. on April 4, 1976, Efrain Burgos, George Rodriquez, Cello Pettiford and several companions arrived at a store on Winthrop and Ainsley Avenues in Chicago. Rodriquez noticed a group of teenagers approximately 15 feet from the store and spoke to a member of that group, a youth named Anibol. Rodiquez, Burgos and their companions then entered the store and made some purchases. As Rodriquez and Burgos left the store they noticed a maroon station wagon across the street. Mitchell King, the defendants, and several other people were inside the station wagon. King exited the station wagon, crossed the street, and approached the group of teenagers. King pulled out a knife and asked, "Are you people Kings? Who wants to be the first one?" King then approached Anibol with the knife and Rodriquez, Burgos and Pettiford became frightened and started to run. As King crossed the street the two Lopez brothers were exiting the station wagon. Efrain Burgos heard someone yell out that one of the Lopez brothers was there and that he had a gun. Cello Pettiford saw one of the Lopez brothers chase a man named James into a hallway across the street. He heard a shot come from the hallway and then observed one of the Lopez brothers leaving the hallway and running back toward the street. Pettiford saw Lopez point his arm in the direction of Pettiford's friends, noticed a dark object in Lopez' hand, saw the arm jerk, and heard three shots coming from Lopez' direction. The Lopez brother with the black object ran back across the street and entered the station wagon with the other group of people. As the car drove away, Pettiford heard someone inside the car yell, "Lord love, Gaylord [sic] love."

Pettiford also testified at trial that during the entire incident, the other Lopez brother remained across the street. In an attempt to impeach this testimony, the defense read into evidence a portion of Pettiford's testimony at a preliminary hearing at which Pettiford testified that he had seen only one of the Lopez brothers at the scene. Pettiford never indicated at trial which Lopez brother crossed the street and which one remained by the car. We note, however, that in the body of a motion for appointment of separate counsel for the Lopez brothers is an excerpt from the preliminary hearing testimony of Cello Pettiford wherein Pettiford stated that he saw only one Lopez brother at the scene. At the preliminary hearing, Pettiford identified Gerald Lopez as the brother at the scene. This portion of the preliminary hearing testimony was never read into the record at trial.

After the maroon station wagon pulled away, Cello Pettiford encountered both Rodriquez and Burgos lying on the ground with bullet wounds. Pettiford identified both of the Lopez brothers and Mitchell King in the police station shortly after the incident.

The only witness to testify for the defense, Edwin Diaz, was in custody for a pending burglary charge at the time of trial. Diaz testified that he did not see the Lopez brothers at the scene at the time of the shooting and that "a blond-haired dude" did the shooting.

Defendants argue that the proof presented at trial failed to prove either of the defendants guilty beyond a reasonable doubt. We agree and for that reason must reverse the judgments entered by the trial court. The evidence presented by the prosecution clearly showed that one of the Lopez brothers crossed the street and shot both Burgos and Rodriquez. The evidence also indicated that the other Lopez brother remained across the street by the station wagon. However, as admitted by the State, there was no testimony as to which Lopez brother crossed the street and which one remained by the car. Both defendants were convicted of attempt murder on the basis that one was accountable for the conduct of the other. Under such a basis the prosecution never had to prove which brother crossed the street and shot the victims. After reviewing the evidence presented at trial, we, however, conclude that the evidence is insufficient to prove accountability.

Section 5—2(c) of the Criminal Code of 1961 provides, in part, that a person is legally accountable for the conduct of another when

"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *" Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c).

■■ ■ The State correctly maintains that one may aid and abet in the commission of an offense without actively participating in the overt act. (*People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693.) Moreover, evidence that one who voluntarily attaches himself to a group bent on illegal acts with knowledge of its design supports an inference of a common purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) The fact that defendant was present during commission of a crime without disapproving or opposing the commission of a crime, a continued close affiliation with the co-defendants after the commission of the crime, and his failure to report the incident or confide in anyone about it are all factors which may be considered in establishing accountability. (*People v. Cole* (1977), 50 Ill. App. 3d 133, 365 N.E.2d 133.) However, mere presence at the scene of a

crime coupled with flight from the scene of a crime is insufficient to establish accountability. *People v. Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606.

■ In the instant case the only testimony presented to establish accountability was that one of the Lopez brothers arrived in a station wagon with the other Lopez brother, Mitchell King, and some other companions; that he remained by the car during the shooting; and that he left in the station wagon after the shooting. There is no evidence that he had any knowledge that a crime was to be committed, or that he voluntarily attached himself to his brother and Mitchell King with knowledge they were to commit any illegal acts. Considering the failure of the State to present any evidence in this regard and the evidence actually presented at trial, we must conclude that the evidence was insufficient to prove accountability and we therefore reverse the judgments of attempt murder and aggravated battery based on accountability.

We next consider the judgments entered on the guilty verdicts pertaining to the Lopez twin who actually fired the gun. As admitted by the State, although there was evidence proving that the man who fired the gun was one of the Lopez twins, no witness could identify which twin actually crossed the street and fired the gun. As indicated previously, such a failure was not fatal at the trial level because one Lopez brother was held accountable for the conduct of the other. However, having reversed the judgments based on the accountability theory, we must also reverse the judgments entered against the Lopez brother who actually fired the gun due to the State's failure to prove which brother fired the gun.

■ Having reversed the attempt murder and aggravated battery judgments entered against both brothers, we also reverse the order revoking Paul Lopez' probation based on the above convictions. (See *People v. Hannah* (1975), 31 Ill. App. 3d 1087, 335 N.E.2d 84.) Having so decided, we see no reason to consider the other contentions of error raised in defendants' brief.

For the foregoing reasons, we reverse the two attempt murder judgments and two aggravated battery judgments entered against each Lopez brother. We also reverse the order revoking Paul Lopez' probation.

Judgments reversed; order reversed.

GOLDBERG, P. J., and CAMPBELL, J., concur.