THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHRISTOPHER CRISP, Defendant-Appellant.

First District (1st Division)   No. 1—90—1852

Opinion filed December 28, 1992.

654

Dennis M. Doherty, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Barbara Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant, Christopher Crisp, was convicted in a jury trial of attempted first degree murder, armed violence, and aggravated battery. He was sentenced to concurrent terms of 28 years for attempted first degree murder, 28 years for armed violence and five years for aggravated battery, to be merged into the Class X sentence.

On appeal, defendant contends that the trial court erred in allowing the State to elicit testimony from the complainant that he had previously seen defendant with a gun and by prohibiting defendant from cross-examining the complainant (1) as to his use of narcotics and (2) about the statement, "Kenny did it," which he allegedly made at the scene after being shot. He also contends that he was denied a fair trial when the court permitted the State to attempt to elicit post-arrest hearsay statements of witness Kenneth Twyman.

Defendant next maintains that the trial court erred in excluding testimony as to his state of mind and evidence as to the complainant's state of mind at the time the complainant stabbed Twyman. He con-

tends that the State improperly used other crimes evidence and improperly made gang crime insinuations. Defendant also asserts that his right to due process of law and his right to confront his accusers were violated when the trial court permitted police testimony that defendant possessed narcotics although no proper foundation was laid for the identification of the substances.

Defendant claims that he was deprived of a fair trial due to the prosecutor's improper and inflammatory closing argument and his misstating of the law. He asserts that the trial court further erred in denying his motion for production of the felony review file and notes relative to the State's decision not to approve felony charges on conspirator Twyman. Defendant contends that even if individually insufficient to constitute reversible error, the cumulative effect of the foregoing errors mandates a new trial. Finally, defendant contends that the trial court abused its discretion during sentencing by considering factors implicit in the crime as aggravation and by sentencing him to an excessive sentence.

For the following reasons, we affirm. The following evidence was adduced at trial. The complainant, Anthony Banks, had known defendant since childhood and defendant's companion, Kenneth Twyman for about a year. During the first week of October 1987, Banks was walking down the street when he was approached by defendant and Twyman in a brown 1987 Cadillac. Defendant allegedly asked Banks if he wanted to sell "powder" and told him in return he would receive drugs, a beeper, and $200 a week. The victim refused. Defendant and Twyman approached Banks in late October and again in November with the same proposal. However, in late October, Twyman threatened Banks, "we're going to get, you know, popped in your a--." During the November incident, while Banks was at a friend's house, defendant was seated in a car nearby with Twyman standing outside. At that time, Twyman yelled, "Come on punk" and "you might as well come on out, punk, you're going to get it anyway." Banks left the house after his mother arrived.

According to the testimony of Banks, on November 30, 1987, at approximately 3 p.m., he was on the corner talking to a friend when Twyman and defendant approached on foot. Twyman said, "Punk, we told you don't come back around here," and pulled out a gun and tried to hit Banks with it. Banks then grabbed Twyman's hand and struggled with him for the gun. Banks also reached into his jacket pocket, withdrew a small knife and stabbed Twyman three times before the gun fell to the floor. Defendant then picked up the gun and Banks ran. As Banks ran, defendant fired the gun and shot three

times, striking Banks in the legs and lower back. As a result of the shooting, Banks was paralyzed from the waist down.

Officer Darling investigated the shooting. He testified that at the scene, Banks told him he had just been shot by the defendant and Twyman. Detective Caesar testified that he spoke to Twyman at Englewood Hospital. The State rested.

Defendant testified and denied ever threatening Banks. According to his testimony, on November 30, 1987, Banks approached him and Twyman with a knife in his hand. Banks said to Twyman, "What's up now?" When Banks raised the knife, Twyman pulled out the gun and told Banks, "You can put that knife up." Banks and Twyman then "went into a tussle" and the gun was knocked from Twyman's hand and it fell to the ground. Defendant stated that he then saw Banks stab Twyman in the back and, crawling, try to get the gun. Twyman said "get the gun." Defendant reached the gun first. He testified that Banks got up and started swinging the knife at him. Defendant stepped back, closed his eyes and quickly fired three shots.

On cross-examination, defendant acknowledged that during the police's initial investigation he told them that he did not know anything about Banks and that he was not at the scene of the crime. He also testified that he was not a drug dealer. However, during rebuttal, the State presented the testimony of police officer Cross, who stated that on July 10, 1987, he saw defendant in his bedroom sitting on the bed with numerous empty plastic bags, plastic bags containing multiple tinfoil packages and one plastic bag containing white powder. The white powder subsequently tested as cocaine and was also found inside the tinfoil packages. Officer Cross also found 89 bags containing marijuana, drug paraphernalia, and cash totalling $1,255 in the bedroom.

The jury found defendant guilty of aggravated battery based on permanent disability, aggravated battery based on use of a deadly weapon, aggravated battery based on great bodily harm, armed violence, and attempted first degree murder. Following a hearing in aggravation and mitigation, the court sentenced defendant on the convictions.

Defendant first contends that the pivotal issue at this trial was whether he acted in self-defense in shooting Banks and that it was undisputed he did not arrive at this encounter armed. Thus, defendant contends that he was denied a fair trial and prejudiced when the trial court allowed evidence implicating him with prior possession of a gun which was in no way connected with the crimes charged. Defendant asserts that the trial court improperly permitted the State to elicit

testimony from Banks on redirect examination that he had seen the defendant with a gun before.

Defense counsel initially questioned Banks about a gun. He asked:

"Q. Did you see [defendant] with a gun that day prior to, prior to Twyman pulling a gun?

A. Yes, sir, I did.

Q. On November 30th, 1987? Prior to Twyman pulling the gun in this case?

THE COURT: That same evening?

Q. Same afternoon. Mr. Twyman pulled a pistol on you, correct?

A. That's right.

Q. Before that occurred, did you see [defendant] with a gun?

A. No, sir.

Q. And [defendant] had never pulled a gun on you before, had he?

A. No, sir."

On redirect examination, the prosecutor questioned the complainant:

"Q. Were you running towards [defendant] or away from him?

A. Away.

Q. Did you ever threaten [defendant] with that knife?

A. No.

Q. Counsel asked if you were scared of Twyman. Were you?

A. Yes, I was.

Q. Counsel asked if you were scared of [defendant]. Were you?

A. Yes.

Q. Were you scared of [defendant] when he had that gun?

A. Yes, sir.

Q. Have you ever seen [defendant] with a gun before?

A. Yes. I seen him with a gun before.

DEFENSE COUNSEL: Objection. Move to strike that.

THE COURT: Overruled. The answer will stand."

■■ We believe the trial court properly admitted this testimony on redirect examination when the defendant opened the door on cross-examination. The scope of redirect examination is within the sound discretion of the trial court, and its ruling will not be disturbed on review unless it is a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285.

Moreover, in light of defendant's testimony at trial, it is clear that the evidence implicating him in the prior possession of a gun was relevant to the truthfulness of his claim of defense of self and defense of others. Defendant denied ever threatening Banks. He stated that Banks approached him with a knife in his hand and that he fired three shots at Banks only after Banks swung the knife at him. However, defendant's testimony is directly contradicted by Banks' testimony. Banks testified that he had been threatened by defendant three times prior to the shooting. Banks also stated that Twyman pointed the gun at him, he stabbed Twyman in an effort to release the gun and defendant picked up the gun and shot him as he ran away.

Neither do we find "intentional misconduct" on the part of the prosecutor here as in the case relied upon by defendant, *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without such evidence. *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355.

Further, the trial court only admitted this evidence on redirect examination after defendant initiated questioning of Banks regarding defendant's prior possession of a gun. Accordingly, we hold that the trial court acted properly and within its discretion by allowing the prosecution to present evidence that Banks previously had seen defendant with a gun.

We find no merit in defendant's contention that the trial court erred in prohibiting him from cross-examining Banks as to the latter's use of narcotics. During the trial, the State objected when defense counsel asked Banks: "On November 30th, 1987, you were a user of P.C.P., the drug P.C.P.?" During the ensuing sidebar, defense counsel contended because, "[i]t's in the hospital report," purportedly Banks' "history as a P.C.P. user," defendant was entitled to cross-examine Banks about his use of narcotics. The court sustained the State's objection.

The trial court's determination as to the admissibility of evidence lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) Moreover, the latitude to be allowed during cross-examination is a question for the trial judge. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) It is well settled that narcotics addiction has an important bearing upon the credibility of a witness, and counsel may use legitimate methods to attack the credibility of such a witness. (*People v. Lewis* (1962), 25 Ill.

2d 396, 185 N.E.2d 168.) Thus, our supreme court has held that the question of whether a witness is a narcotics addict at the time of testifying or at the time that an event occurred is a proper subject of cross-examination. *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201.

■ The record here indicates that defense counsel failed to provide a foundation as to when Banks was a narcotics addict, if at all. The following colloquy occurred between defense counsel and the court during the sidebar:

"MR. DOHERTY [Defense Counsel]: If he used narcotics, I am entitled to cross examine on it.

THE COURT: Do you have any proof?

MR. DOHERTY: I know if he has a history as a P.C.P. user, narcotic addict, I am entitled to have him roll his arm sleeve up.

THE COURT: When?

MR. DOHERTY: I don't know when.

THE COURT: I will sustain the objection."

Before such cross-examination could be pursued, defense counsel was required to lay a proper foundation showing the witness to be addicted to narcotics. *People v. Meares El* (1980), 83 Ill. App. 3d 31, 35, 403 N.E.2d 547, 551.

Accordingly, we find that the trial court properly excluded evidence of Banks' alleged drug addiction. Because defendant did not provide an adequate foundation to show that Banks was a narcotics addict, we find no error in the trial court's ruling. Moreover, the defense was given ample opportunity to cross-examine Banks to display to the jury whether or not Banks was worthy of belief. We further agree with the State's argument that the allowance of the evidence reflected on Banks' medical record would not shed light on his ability to perceive the events, but, to the contrary, would simply "dirty up" Banks in the eyes of the jury. See *People v. Henderson* (1988), 175 Ill. App. 3d 483, 529 N.E.2d 1051.

Defendant also contends that the trial court erred by limiting the cross-examination of Banks about a purported statement Banks made to a friend after he was shot and lying in the street that "Kenny [Twyman] did it." Defendant argues that this evidence reflected in the police report was admissible as a prior inconsistent statement which may be introduced to impeach the witness' trial testimony. (See *People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564.) Defendant also contends that the statement was admissible as evidence that someone

other than he may have been responsible for the crime and to corroborate his claim that he acted in self-defense.

■ We find that defendant has waived this issue by failing to properly object at trial and in his post-trial motion. Where an issue is not raised in a written post-trial motion, it generally constitutes waiver of the issue and cannot be urged as grounds for reversal on review. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant next contends that he was denied a fair trial by the prosecutor's persistence in asking questions about post-arrest statements made by Twyman. The record demonstrates that the State attempted to elicit from Officer Darling what Twyman had said to the officer and then continually attempted to elicit from Detective Caesar statements Twyman made to Caesar at the hospital. During Caesar's questioning, the prosecutor made several inquiries, including: (1) "What did [Twyman] indicate to you?" (2) "What did he [Twyman] say to you?" (3) "Did he [Twyman] tell you if anyone was present?" and (4) "Did he [Twyman] ever tell you it was a kitchen knife?" The court sustained defendant's objection as to what Twyman said to Officer Darling and likewise sustained defendant's many objections to what Twyman said to Detective Caesar.

■ Having reviewed the record, we conclude that the State's questioning was merely an attempt to elicit improper hearsay, which the trial court did not allow. While there may not have been justification for seeking the introduction of post-arrest hearsay statements made by Twyman, any error constitutes harmless error and was cured by the trial court promptly sustaining defense counsel's objection, striking the answer, if given, from the record and instructing the jury to disregard the same. (See *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 488 N.E.2d 1087.) The complained-of questions asked by the State involved matters testified to by Banks or defendant. Both men testified that defendant knew Twyman, that defendant was present at the scene of the crime, and gave a description of the knife used by Banks.

Neither do we believe that the State compounded the error in closing argument when the prosecutor posed to the jury the question, "Where do you think they got the words, large kitchen knife? Mr. Twyman." Moreover, defendant's failure to make a timely objection at the time and his failure to specifically preserve the alleged error for review in his written post-trial motion waives this issue on review. See *People v. Harris* (1990), 196 Ill. App. 3d 663, 554 N.E.2d 367.

Defendant contends that the trial court erroneously refused to permit him to testify about his state of mind at the time he shot

Banks. He asserts that where a claim of self-defense rests upon some reasonable basis, exclusion of state-of-mind testimony by a defendant will ordinarily constitute reversible error. (See *People v. Kline* (1980), 90 Ill. App. 3d 1008, 414 N.E.2d 141.) He maintains that he was arguably prevented from establishing that he did not intend to kill Banks or, alternatively, that he reasonably believed that his own life was jeopardized requiring his resort to deadly force. See *People v. Christen* (1980), 82 Ill. App. 3d 192, 402 N.E.2d 373.

■ However, our courts have held that rejection of evidence is not prejudicial where substantially the same evidence is admitted at another stage of the trial. (*People v. Owens* (1983), 116 Ill. App. 3d 51, 451 N.E.2d 988.) Here, defendant testified that Banks initially approached him and Twyman with a knife in his hand. He also stated that after he shot Banks, he was "scared." Thus, we believe the trier of fact was fully apprised of defendant's defense by his testimony. Accordingly, we conclude that where sufficient evidence supporting defendant's defense of self and defense of others was presented at some point during the trial, any error in not allowing him to testify directly as to his state of mind must be considered harmless.

■ Defendant also contends that the trial court erred in excluding evidence of Banks' state of mind at the time Banks was stabbing Twyman. The record reveals that during cross-examination of Banks, defense counsel asked, "Was it your intention to kill Twyman when you stabbed him[?]" Although the State objected and the court sustained the objection, Banks responded, "No, sir." Defense counsel at that time neither made a proffer as to his intended line of questioning of Banks nor raised any arguments about the relevancy of Banks' state of mind. Thus, we need not consider the propriety of this issue now. Nevertheless, we believe Banks' intention is irrelevant to defendant's assertion of self-defense and defense of others. The victim's state of mind is relevant only if it in some way affects the defendant's state of mind, which is not the case here. Neither do we find defendant's reliance on declaration cases on point. A declaration may affect a defendant's state of mind (see, *e.g., People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592); however, in the present case there was no prior declaration. Accordingly, we find defendant's contention to be without merit.

Defendant next contends that the trial court erred when it allowed the State to use other crimes evidence. First, defendant asserts that the trial court erroneously overruled his objection to the introduction of evidence that he was found on July 10, 1987, inside his bedroom with 89 packets of marijuana and 23 packets of cocaine. He

asserts that any probative value of this evidence was outweighed by its prejudicial value; moreover, the State abandoned its argument that this other crimes evidence was offered solely on the issue of defendant's motive when it used the evidence to argue defendant was an evil person.

Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's character or propensity to commit crime. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) In the present case, Banks testified that he feared defendant because of his insistence that Banks sell drugs or otherwise face bodily harm. Defendant denied that he ever made such threats, stated that he was innocently involved in the shootings and that Banks was the aggressor.

■ Accordingly, we find that other crimes evidence was properly admitted to show motive, knowledge of drugs, absence of an innocent frame of mind and the presence of criminal intent. Further, we find that the prosecutor's remarks about defendant's involvement in drugs were based upon testimony presented at trial where repeated references were made during the trial to defendant's attempts to force Banks to sell drugs.

Defendant also contends that he was denied a fair trial where the court allowed Officer Cross to testify on rebuttal that on July 10, 1987, he went to a house and found defendant there sitting on a bed. When asked what was on the bed, Cross stated, "Narcotics." Defendant's objection was overruled and Cross went on to testify that he found packets containing white powder, which were "subsequently tested as cocaine" and 89 packets "containing marijuana." He argues that no foundation was laid for Cross' testimony that "cocaine," "narcotics" and "marijuana" were found in defendant's apartment. He also urges that the identification of a given substance as a controlled or illegal drug is generally beyond the common experience and knowledge of juries thus requiring expert testimony in some form.

Defendant cites *People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795, for the proposition that police officers may not be presumed to possess the requisite expertise to identify a narcotic substance. In *Park*, a deputy sheriff testified that a substance in an envelope was marijuana. The court there determined that the sheriff's testimony was insufficient to convict defendant of possession of cannabis.

■ In the present case, defendant had been previously found guilty of possession with intent to deliver. In that prior conviction, the substances found in defendant's apartment were determined to be cocaine and marijuana. Defendant's prior conviction was properly admitted and

a certified copy of the conviction was entered into evidence. In the trial below, Cross testified that certain bags contained marijuana and the other bags containing white powder subsequently tested as cocaine. It was not error for the trial court to allow Cross to testify to facts within his knowledge and recollection. Accordingly, we hold that the trial court properly admitted this evidence.

We find that defendant's contention that the State's gang crime insinuations were prejudicial is meritless. On direct examination of Officer Darling by the prosecutor, the following testimony was presented:

"Q. Officer, can you state your name and spell it for the record, please?

A. James Darling. D-A-R-L-I-N-G.

Q. Where are you currently assigned?

A. Gang Crimes South, Chicago Police Department.

Q. How long have you been a Chicago Police Officer?

A. Fourteen years.

Q. And can you tell the ladies and gentlemen of Jury what a gang crimes officer does?

MR. MUNOZ [Defense Counsel]: Objection.

THE COURT: Overruled. He may answer.

A. I am a gang crimes specialist, and our main function is to investigate, follow up and gather intelligence on the gangs and their doings within the City of Chicago."

Officer Darling also testified that he was assigned to the present case, but merely responded to a call in progress.

In *People v. Garrett* (1991), 216 Ill. App. 3d 348, 576 N.E.2d 331, the court found no prejudice to the defendant where a sergeant stated during trial that he was assigned to the special prosecutions gang unit. The court there found that the preliminary question regarding the police officer's assignment was an innocuous part of the foundational requirements. We believe the instant case is on point with *Garrett*.

■ A reviewing court will not disturb the trial court's evidentiary rulings absent an abuse of discretion and a showing of prejudice to the defendant. (See *People v. Holman* (1987), 157 Ill. App. 3d 764, 510 N.E.2d 1139.) Here, considering that the evidence of defendant's guilt was overwhelming, the verdict would not have been different had Officer Darling's reply not been made. Accordingly, we find that Officer Darling's testimony was merely an explanation of his job title and job function, and even assuming the introduction of such testimony was error, the error was harmless.

■ Defendant asserts that during closing argument the prosecutor misstated the law by advising the jury that, if defendant is guilty of ag-

gravated battery, he is automatically guilty of armed violence. We agree and find it was error for the prosecutor to so state the law. In addition, the defendant was improperly convicted on the underlying felony of aggravated battery where the physical act was the basis for the battery and armed violence charges. Armed violence and aggravated battery are separate offenses, with separate penalty provisions. Although similar, multiple convictions for both offenses may not stand where based on the same act. (See *People v. Decker* (1984), 126 Ill. App. 3d 428, 467 N.E.2d 366.) In *People v. Baity* (1984), 125 Ill. App. 3d 50, 465 N.E.2d 622, the defendant injured the victim by rapidly shooting her three times in succession without any intervening act or event. The court there held that the injuries inflicted constituted part of the same physical act and, thus, vacated the conviction and sentence for armed violence based on aggravated battery.

The factual matrix in the present case is strikingly similar to that in *Baity*. Accordingly, pursuant to our authority to vacate a criminal sentence (134 Ill. 2d R. 615(b)(4)), we vacate defendant's conviction and sentence on the armed violence charge; thus, remand is unnecessary. (See *People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634.) The convictions and sentences for aggravated battery and attempted first degree murder will stand.

Defendant next contends that the trial court erred in denying his motion for production of a felony review file. Defendant moved for production of the State's Attorney's felony review file and notes relative to his decision not to approve felony charges against Twyman. Twyman was charged with a misdemeanor. Essentially, defendant raises a *Brady* violation (see *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194), in that evidence favorable to his defense was not disclosed. He requests this court to remand for a full hearing on the determination of whether there is material or evidence favorable to him which was withheld or suppressed by the State.

The trial court summarily denied defendant's motion for production. On appeal, the State contends the denial was proper because the felony review file was privileged work product. The State relies on Supreme Court Rule 201(b)(2), which provides, in pertinent part:

> "(2) *Privilege and Work Product.* All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose

the theories, mental impressions, or litigation plans of the party's attorney." (134 Ill. 2d R. 201(b)(2).)

We believe Rule 201(b)(2) is inapplicable here. There is no attorney-client relationship existing between the State and Twyman as a potential witness or potential defendant. Thus, any information involving Twyman or statements made by him to the State's Attorney were not privileged communications between a party and the attorney for the party within the meaning of Rule 201(b)(2).

■■ Nevertheless, we find no error in the court's denial of defendant's motion to produce the felony review folder relevant to Twyman. In *Brady v. Maryland*, the Supreme Court held that a violation of due process occurs when a prosecutor suppresses evidence material to the issue of the accused's guilt or innocence after there has been a specific request for its production. To establish a *Brady* violation, the defendant must demonstrate (1) that the evidence was favorable to him, (2) that the prosecutor failed to disclose the evidence in response to a specific request, and (3) that the evidence was material. (*People v. Post* (1982), 109 Ill. App. 3d 482, 489, 440 N.E.2d 631.) With regard to the factor of materiality, we have stated that materiality under *Brady* means evidence that would tend to raise a reasonable doubt of defendant's guilt. (*People v. Ojeda* (1980), 91 Ill. App. 3d 723, 728, 414 N.E.2d 1156.) It is not enough that the evidence might have helped the defense (*People v. Kosik* (1982), 110 Ill. App. 3d 930, 940, 443 N.E.2d 238); to be considered material, the evidence must reasonably be expected to affect the outcome of the case. See *People v. Penland* (1978), 64 Ill. App. 3d 656, 661, 381 N.E.2d 840.

Although the instant case involves a specific request for information as in *Brady*, we find that defendant here has failed to show favorableness and materiality as required for a *Brady* violation. We reject defendant's contention that evidence material and favorable to him may have been suppressed because the felony review folder on Twyman contained information about the State's decision not to prosecute Twyman. We have reviewed the record and learned that the State turned over to defendant prior statements made by him which were in the felony review folder. The prosecutor argued that the rest of the material was not *Brady* material, but work product. He also stated that "there [were] no statements that he was aware of in the folder. The only statements Twyman made counsel has those and those are in the police reports." Defendant has not shown how such evidence would have been favorable to him. He merely speculates that he might have been able to use the information about Twyman in some manner. As we have opined previously, "[s]uch speculation does not establish materiality or favorableness

in the *Brady* context." *People v. Velez* (1984), 123 Ill. App. 3d 210, 218, 462 N.E.2d 746.

Moreover, Twyman did not testify as a witness during the trial. Neither was he charged in the incident or on trial as a codefendant or coconspirator. Accordingly, where the State turned over to defendant prior statements made by him and disclosed that there were no statements made by Twyman, inculpatory or exculpatory, we find no showing of a *Brady* violation and no error in the trial court's denial of the defendant's motion to produce the felony review folder. A defendant's assertion of prejudice must be based on more than "mere conjecture." See *People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857.

■■■ Having reviewed individually the assignments of error raised by defendant on review, we conclude that he is not entitled to a new trial. Neither do we believe the sentences imposed by the trial court on the attempted murder and aggravated battery convictions to be excessive. Sentencing is a matter of judicial discretion, and where the sentence imposed is within the statutory limits, we hesitate to exercise our power to reduce the sentence absent a finding that the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) Moreover, a "rebuttable presumption arises that the sentence imposed was proper and is only overcome by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines." *People v. Jenkins* (1984), 128 Ill. App. 3d 853, 857, 471 N.E.2d 647.

We have reviewed the record in the present case and find no abuse of discretion on the part of the trial court. The sentences imposed were within the statutory range. Further, the record shows that the trial judge considered factors both in aggravation and mitigation before imposing sentence. Accordingly, we hold that the sentence of 28 years imposed for attempted first degree murder and the sentence imposed of five years for aggravated battery, which is merged into the Class X sentence, are within the discretion of the trial court. However, as mentioned above, we agree with defendant's contention that the conviction and sentence imposed on the armed violence charge were improper.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part. The sentences on the attempted first degree murder and aggravated battery convictions are affirmed and the sentence on the armed violence conviction is vacated.

*Affirmed in part; vacated in part.*

BUCKLEY, P.J., and O'CONNOR, J., concur.