THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JULIO VELEZ, Defendant-Appellant.

First District (1st Division) No. 82—1400

Opinion filed March 30, 1984.

Steven Clark, of State Appellate Defender's Office, and Jean E. McEwen, of Schiff, Hardin & Waite, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Julio Velez was found guilty of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9(1)), and sentenced to 40 years in prison. On appeal, defendant raises the following issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether the State's failure to turn over certain information prior to trial denied him due process of law; and (3) whether he knowingly and intelligently waived his right to a jury trial. For the reasons set forth below, we affirm defendant's conviction.

The charge against defendant arose out of the shooting death of Thaddeus Papierz on June 21, 1981, at a Polish army veteran's home in Chicago. The victim worked and resided at the home. At trial, the State presented several witnesses, among whom was 78-year-old Tadeusz Karwatowicz, a resident and employee of the veteran's home. Karwatowicz testified that on the night of the incident a party was

held on the first floor of the home. Shortly after midnight, he was on the second floor of the home watching the stairwell, while the victim was attending to his duties on the first floor. Karwatowicz then saw two young men walk up the stairs to the second floor. Due to poor eyesight, he could not positively identify either of the men at trial, but was able to describe them. He stated that the taller of the two men was a Latino, had dark hair about six inches long, and wore a red bandana on his head.

Karwatowicz further testified that the two men looked inside the washroom on the second floor, causing the victim to walk upstairs from the first floor and ask what they wanted. Although Karwatowicz was unable to follow much of the conversation, he stated the victim apparently asked the two men to leave the premises. Karwatowicz testified the victim then turned to him and requested he unlock the office on the second floor and call the police. As he started to do so, a struggle began between the victim and the taller man. He heard three shots and saw the victim fall to the floor. Karwatowicz could not determine which of the intruders, who were close to each other, actually fired the shots. The two men then fled.

Ramon Lopez, who was 11 years old at the time of the incident, testified that he attended the party at the veteran's home on the night of the incident. During the course of the evening he went outside to his father's truck to listen to music and later reentered the home just as the victim was fatally shot. He observed three men, two at the top of the stairs and the third on the stairs, and saw one of the men at the top of the stairs fire a gun. He stated that the man who fired the gun had a dark complexion, dark hair and wore a red bandana around his head and a sleeveless sweater. He noticed a tattoo on the upper part of the arm in which he held the gun. Two or three shots were fired, after which he ran.

Pedro Renta, Jr., testified that on the night of the incident he and his wife were sitting on the front porch of their home with two men known to him as "Kong" and "Fat Boy." He identified Kong as the defendant, but did not know the real name of Fat Boy. Subsequently, a person unknown to Renta approached the porch looking for a man called "Pappo" who had been with Renta earlier that evening. Renta testified he went to the veteran's home with defendant and Fat Boy to look for Pappo. The three men went inside the home and proceeded to the second floor, where they used a washroom. Defendant then remained on the second floor while Renta and Fat Boy walked down to the first floor. Renta stated that on their way downstairs they were passed by the victim who was on his way up to the second

floor. The victim approached defendant and said something to him which he could not hear. The victim then spoke with another man and handed him some keys. As the second man went to open a door, defendant produced a gun and held it to the victim's temple. The victim grabbed defendant's right wrist and a struggle for the gun began. Defendant pushed the victim and then fired four shots at him. Renta and Fat Boy ran out of the building, followed by defendant.

Renta additionally testified that upon leaving the home, defendant handed him the gun, wrapped in a red bandana, and told him to hide both items. He initially hid the gun and bandana in his home, and later in an alley. Renta stated that when police subsequently came to his home he showed them where he hid the two items. He identified defendant as the person who fired the shots, both from a photographic array at the police station and at a preliminary hearing. Renta testified that on the night the shooting occurred, defendant wore a sleeveless tee-shirt and had tattoos on the upper portion of both arms; on his left arm was a crown indicating a gang known as the Imperial Gangsters, while on his right arm appeared the name "Kong." Renta stated that at the time of the incident defendant's hair was about shoulder length, while at the preliminary hearing it was cut much shorter. At the time of the shooting, he had known defendant for approximately two weeks.

Chicago police officer Jose Martinez testified that on July 26, 1981, an unidentified woman telephoned and spoke with him and his partner. Martinez was not permitted to relate the content of this conversation due to a defense objection which was sustained. Martinez stated that following this conversation, officers obtained an arrest warrant for defendant and proceeded to his home where defendant was found hiding under a bed and was thereafter arrested.

Defendant, at trial, exhibited his arms and tattoos to the trial judge. Additional evidence in the State's case was received by stipulation. It was stipulated that the cause of death was multiple gunshot wounds and that the medical examiner had recovered three .32-caliber bullets from the body of the victim. These bullets were taken to the police laboratory, as was another spent .32-caliber bullet recovered from the scene of the shooting. It was determined that all four bullets were fired from the .32 Colt revolver that defendant gave to Renta. No fingerprints were found on the gun.

Also received into evidence was an oral statement defendant gave police following his arrest in which he admitted going to the veteran's home on the night of the incident, but denied shooting the victim. In the statement, defendant indicated that only Renta and Fat Boy walked up

to the second floor of the home, and that he remained on the first floor and ran when he heard shots. Defendant further stated that although he had a gun with him earlier that day, he did not have it when he went to the veteran's home at night.

Based on the foregoing evidence, the trial court found defendant guilty of murder. Defendant's motion for a new trial was denied.

## I

On appeal, defendant initially urges that he was not proved guilty beyond a reasonable doubt. Specifically, he contends the trial court erred in not discounting the testimony of Pedro Renta, Jr., because Renta was an accomplice and his testimony was impeached by other witnesses. We reject this argument.

 █ It is well established that in a bench trial the credibility of witnesses and weight to be afforded their testimony are determined by the trier of fact since he is in a position to observe the witnesses. (*People v. Son* (1982), 111 Ill. App. 3d 273, 279, 443 N.E.2d 1115; *People v. White* (1978), 69 Ill. App. 3d 830, 840, 387 N.E.2d 728, *cert. denied* (1980), 444 U.S. 1090, 62 L. Ed. 2d 778, 100 S. Ct. 1054.) The finding of the trial court will not be disturbed on review unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Berger* (1982), 109 Ill. App. 3d 1054, 1069, 441 N.E.2d 915.) The testimony of even one witness, if positive and credible, is sufficient to convict, even though it is contradicted by the accused. *People v. Jones* (1976), 42 Ill. App. 3d 353, 362, 356 N.E.2d 114.

 In the case at bar, the evidence is not so improbable as to raise a reasonable doubt of defendant's guilt. First, the record establishes that Renta testified he saw defendant fatally shoot the victim and he provided a description of defendant's physical characteristics. He positively identified defendant as the killer at trial, from a photographic array at the police station and at a preliminary hearing. Renta's testimony received corroboration from witnesses Ramon Lopez and Tadeusz Karwatowicz. For example, a tattoo described by Renta was also seen by Lopez and was shown to exist when defendant exhibited his tattoos to the court. Lopez further corroborated Renta's testimony that defendant was on the second floor, that another man was near him on the stairs and that a third man was further down the stairway. Both Lopez and Karwatowicz also recalled observing the red bandana described by Renta.

We note that defendant cites *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291, a case involving a completely uncorroborated accomplice witness. Defendant's reliance on *Wilson* is misplaced, first because, as established above, Renta's testimony was not entirely uncorroborated.

Secondly, contrary to defendant's assertion, the evidence does not establish that Renta was an accomplice; there are no facts indicating he did anything before or during the shooting to aid or abet defendant in the act of killing the victim. (Ill. Rev. Stat. 1981, ch. 38, pars. 5—1, 5—2.) Moreover, this court has held that the testimony of an accomplice, standing alone, is sufficient to support a conviction, provided that such testimony is clear and convincing. *People v. Nathaniel* (1981), 103 Ill. App. 3d 610, 431 N.E.2d 1080.

■ Defendant further contends that Renta's testimony lacked credibility because he was impeached when a police officer, called as a defense witness, testified that at the police station he gave Renta *Miranda* warnings. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) At trial, Renta stated he never received *Miranda* warnings. Such impeachment, however, was on a purely collateral matter, and it was up to the trial judge to evaluate it in terms of the entire testimony presented at trial. (*People v. White* (1978), 69 Ill. App. 3d 830, 840, 387 N.E.2d 728, *cert. denied* (1980), 444 U.S. 1090, 62 L. Ed. 2d 778, 100 S. Ct. 1054.) The same holds true with regard to defendant's allegation that Renta's testimony varied as to his position on the staircase leading to the second floor. Although Renta apparently was unsure of exactly where he stood on the stairway, this was but one factor going to his credibility, and was to be weighed by the trial court.

We have reviewed the remaining allegations of inconsistency raised by defendant in regard to Renta's testimony and conclude they do not merit reversal of this cause. Defendant admitted being present at the shooting and was positively identified as the killer by Renta. Much of Renta's testimony was corroborated by Lopez and, to a lesser extent, by Karwatowicz. The credibility of the witnesses was evaluated by the trial judge, who was able to scrutinize their demeanor. We find no reason to substitute our judgment for that of the trial judge.

## II

Defendant next argues he was denied due process of law because the State failed to disclose until after trial certain police memoranda, now referred to as "street files," in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. The State maintains it had no knowledge of these memoranda until after trial because they apparently were superseded by more detailed police reports and were therefore not in the case file. The State further contends, and we agree, that the evidence in question was not favorable or material to the issue of defendant's guilt and, therefore, no due process violation occurred.

■ In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83

S. Ct. 1194, the Supreme Court held that a violation of due process occurs when a prosecutor, regardless of motive, suppresses evidence material to the question of the accused's guilt or innocence after there has been a specific request for its production. To establish a *Brady* violation, the defendant must show (1) that the evidence was favorable to him, (2) that the prosecutor failed to disclose the evidence in response to a specific request, and (3) that the evidence was material. (*People v. Post* (1982), 109 Ill. App. 3d 482, 489, 440 N.E.2d 631.) With regard to the requirement of materiality, this court has stated that materiality under *Brady* means evidence that would tend to raise a reasonable doubt of defendant's guilt. (*People v. Ojeda* (1980), 91 Ill. App. 3d 723, 728, 414 N.E.2d 1156.) For the evidence to be "material" in the *Brady* context, it is not enough that it might have helped the defense. (*People v. Kosik* (1982), 110 Ill. App. 3d 930, 940, 443 N.E.2d 238; *People v. Williams* (1980), 91 Ill. App. 3d 631, 634, 414 N.E.2d 1235.) Rather, at the very least, to be considered material, the evidence must reasonably be expected to affect the outcome of the case. *People v. Penland* (1978), 64 Ill. App. 3d 656, 661, 381 N.E.2d 840.

Subsequent to *Brady*, the Supreme Court dealt with the instance of material being withheld which was not *specifically* requested, but which was the subject of a *general* request for exculpatory material in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392. The court in *Agurs* concluded:

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.

In the instant case, the discovery motion filed by defendant was such a general request as dealt with in the *Agurs* case. Even assuming, however, that the present case involves a specific request for information as in *Brady*, we find that defendant has failed to show favorableness and materiality as required for a *Brady* violation. We reject defendant's first allegation that evidence material and favorable to his case was suppressed because the street file indicated a lineup was held in which defendant appeared, but was not identified by either Tadeusz Karwato-

wicz or Ramon Lopez. As noted previously, both witnesses admittedly were unable to identify defendant at trial. It is hardly helpful to defendant's case that two witnesses who candidly admitted at all times that they could not positively identify the killer were in fact unable to identify him in the lineup. Defendant has not demonstrated how such evidence would have been favorable to him.

■ We reach the same conclusion concerning defendant's allegation that he was not made aware, until after trial, that the police had heard certain information secondhand which originated from an FBI informant. This informant is mentioned in the street file. Specifically, a notation in the file disclosed that an officer had heard from an FBI informant that defendant and two others were at the scene of the shooting and committed the murder. Defendant merely speculates that he might have been able to use the information in some manner. Such speculation does not establish materiality or favorableness in the *Brady* context.

With regard to the foregoing point, we note that at trial evidence was adduced indicating that an unidentified woman had called the police and that following this call a warrant for defendant's arrest was obtained. The content of this conversation was not disclosed at trial because defendant's hearsay objection was sustained. However, defense counsel, having become cognizant that at least one unnamed informant was involved in the case, did not pursue the matter in any way. Consequently, we fail to comprehend how a piece of nearly identical information from the street file could be said to be favorable to defendant.

■ Defendant next posits that the street file contained information concerning witnesses Roberto Resto, Sylvia Flores and Pedro Hernandez. As to Hernandez, defendant argues the file disclosed that he may have been the person known as "Popeye." This argument must fail in light of the fact that the State's answer to defendant's discovery motion includes the names and addresses of all three witnesses, as well as numerous other individuals present at the scene of the shooting, and was provided to defense counsel prior to trial. The record further discloses that other reports furnished to the defense before trial provided information about Hernandez and his possible link to "Popeye." Moreover, attached to defendant's post-trial motion were the transcripts of interviews defense counsel conducted with both Mrs. Flores and Hernandez following trial. Defendant cannot now allege prejudice in not receiving a specific piece of information about a witness when, prior to trial, defendant had the witness' name and could have obtained the information by interviewing the witness. *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203.

■ We also reject defendant's allegation that his conviction must be

reversed because the State's failure to disclose the information in the street files violated Supreme Court Rule 412(c) (73 Ill. 2d R. 412(c)), which pertains to discovery and codifies *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. This court has held that non-compliance with discovery requirements does not require reversal absent a showing of prejudice. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 688, 432 N.E.2d 1323.) A defendant's attempt to raise a claim of prejudice must be founded on more than "mere conjecture." (*People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857.) Given our foregoing discussion of the street files, we find no showing of prejudice to defendant.

We additionally note that attached to defendant's motion for a new trial based on newly discovered evidence was the affidavit of his brother, Juan "Spooky" Velez. In that affidavit, defendant's brother alleged that he was erroneously identified by Ramon Lopez as the person who fired the fatal shots. There is nothing, however, in the street files to support the allegation set forth in the affidavit. Defendant's allegation now on appeal that the lack of any such notation shows an attempted hiding of this information by the State is groundless. Furthermore, the name of defendant's brother was listed on the pretrial list of witnesses furnished to defendant and therefore defense counsel could have learned of such information prior to trial.

Moreover, to warrant a new trial based on new evidence, defendant has the burden of rebutting the presumption that the verdict is correct and to show that there has been no lack of diligence (*People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199), and be of such a conclusive character that it will probably change the result on retrial (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323). Here, defendant did not show that the evidence could not have been discovered prior to trial by the exercise of due diligence. Further, even if we were to believe the allegations contained in the affidavit, which the trial judge did not, it was not shown that such evidence would probably change the outcome on retrial. Consequently, we affirm the denial of defendant's motion for a new trial.

## III

Defendant's final contention is that he did not knowingly and understandingly waive his right to a trial by jury. Defendant challenges neither the adequacy of the admonishments given, nor his understanding of them. Rather, he urges only that the failure of the State to supply information contained in the previously mentioned street files rendered his jury waiver less than knowingly and understandingly made.

We find no impropriety regarding defendant's jury waiver. In view of

our holding above that no material evidence favorable to defendant was contained in the street files, we are of the opinion that nothing could have tainted his decision to waive the jury. We further note the record establishes that prior to trial the court fully admonished defendant of his right to a jury and of the consequences in giving up that right. Defendant stated that he understood these rights, wished to waive them and voluntarily signed a jury waiver. Under these circumstances, we conclude that defendant knowingly and intelligently waived his right to a trial by jury. *People v. Beathea* (1974), 24 Ill. App. 3d 460, 467, 321 N.E.2d 458.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.