2023 IL App (1st) 220922-U

FIRST DISTRICT,
FIRST DIVISION
October 10, 2023

No. 1-22-0922

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CR 6294 |
| DARRION WRIGHT, | ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Diana L. Kenworthy, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    First-stage dismissal of defendant's petition for postconviction relief is affirmed where defendant failed to make an arguable showing of a *Brady* violation.

¶ 2    In 2016, defendant Darrion Wright was charged with multiple counts of aggravated criminal sexual assault and aggravated criminal sexual abuse for the 2008 sexual assault of D.L. Pursuant to a fully negotiated guilty plea, defendant was convicted of one count of aggravated criminal sexual assault and sentenced to eight years' imprisonment. Defendant filed *pro se* motions to withdraw his guilty plea and reduce his sentence, which were denied by the circuit court as untimely. Defendant did not file a direct appeal.

¶ 3    On September 21, 2021, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1*et seq.* (West 2020)), alleging, *inter alia*, that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose a supplementary police report indicating that D.L. failed to positively identify defendant as one of her attackers in a March 2016 photo lineup. The circuit court summarily dismissed defendant's postconviction petition as frivolous and patently without merit. On appeal, defendant asserts that the circuit court erred in dismissing his petition because he stated the "gist" of a *Brady* violation. For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5    In April 2016, defendant was charged with six counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse for the 2008 sexual assault of D.L. On July 14, 2017, following a Rule 402 conference (see Ill. Sup. Ct. R. 402 (eff. July 1, 2012)), defendant entered a fully negotiated guilty plea to one count of aggravated criminal sexual assault in exchange for a sentence of eight years' imprisonment followed by three years to life of mandatory supervised release, and the State dismissing all remaining charges against him.[1] Defendant indicated that he understood the rights he was giving up by pleading guilty and that no one threatened him or promised him anything to "make [him] plead guilty."

¶ 6    As a factual basis for the plea, the parties stipulated that on May 22, 2008, D.L. was walking near a bus stop at 79th Street and Halsted when she was approached by two men. The men forced her into a vacant building located at 78th Street and Union, where they "were joined

_____

[1] Prior to the Rule 402 conference, defendant was advised that "right now as charged the minimum sentence *** is 35 years in prison" but "because [the State] has agreed to conference it on one of the cases, it's 6 to 30."

by two to three [other] males." "[D.L.] was sexually assaulted vaginally by each of the males." D.L. ran to a nearby police station to report the sexual assault. She was taken to the hospital, where a criminal sexual assault kit was completed. "Semen from that criminal sexual assault kit was found in the vaginal swab," and a DNA analysis of the semen "hit on defendant." "[A] confirmatory swab place[d] the defendant's DNA as a match to the semen that was found in the victim's vagina."

¶ 7     The trial court found that the stipulated facts were "sufficient to prove [defendant's] guilt beyond a reasonable doubt." The court also found that defendant understood the nature of the charges against him and that his plea was made freely and voluntarily. Defendant was sentenced to the agreed term of eight years' imprisonment.

¶ 8     On August 14, 2017, defendant filed a "Motion to Withdraw Plea of Guilty and Vacate Judgment of Guilty," alleging that he did not enter his plea freely and voluntarily because he was "under the impression" that his "plea deal was 8 years at 50%." On November 2, 2017, defendant filed a "Petition to Withdraw Guilty Plea and Vacate Sentence," claiming that his decision to plead guilty was "impulsive" and that he was "under the impression [his] sentence would be 5 [years] at 85%." Defendant filed a petition to reconsider sentence on the same date. On November 8, 2017, defendant withdrew these motions in court, stating, "I'm just going to stay with my original sentence, what you gave me."

¶ 9     On May 9, 2018, defendant filed a "Petition to Withdraw Plea and Vacate Sentence," alleging that his plea was "the result of coercion" and that he received "inadequate representation by counsel," who "deluded [him] into taking a plea deal." Defendant raised these same arguments in a June 11, 2018 "Motion for Reduction of Sentence" and July 12, 2018 "Petition to

Withdraw Guilty Plea and Vacate Sentence." The circuit court denied all three of these filings as untimely.

¶ 10    On September 21, 2021, defendant filed a *pro se* petition for postconviction relief under the Act. See 723 ILSC 5/122-1 (West 2020). Defendant alleged that his trial counsel was ineffective for failing to reasonably investigate his alibi and failing to interview witnesses. Defendant also raised a claim of actual innocence, alleging that he had consensual sex with D.L. at a hotel on the night of the offense.

¶ 11    Defendant further asserted that his constitutional right to due process was violated under *Brady v. Maryland*, 373 U.S. 83 (1963), because the "State withheld exculpatory evidence that could have helped [him] with [his] case." Specifically, defendant alleged that the State "failed to disclose a Chicago Police Supplementary report no: HP349619," indicating that D.L. was shown a photo array in March of 2016 and "did not positively identif[y]" defendant as one of the perpetrators. Defendant also alleged that his arrest report was the "only report that the prosecution disclosed into evidence in [his] discovery files for [his] defense counsel."

¶ 12    Defendant attached the supplementary police report to his petition. The report indicates that on March 12, 2016, a "CODIS convicted offender association link[ed] recovered evidence from this case *** to a convicted offender DNA profile." Specifically, a "male DNA profile had been identified on the victim's vaginal swabs which matched to convicted offender Darrion WRIGHT ***. This association is to a major DNA profile identified in a mixture of DNA profiles contained in the vaginal swabs." On March 25, 2016, D.L. was brought to the police station, where a photo lineup was conducted. D.L. "was unable to identify anyone in this lineup." The report further indicates that the "complete results of that line-up are contained in a separate line-up supplementary report."

¶ 13    On November 22, 2021, the circuit court dismissed defendant's postconviction petition as "frivolous and patently without merit." The court rejected defendant's ineffective assistance of counsel claim, finding that defendant "voluntarily and intelligently entered into a plea of guilty" and that defendant "cannot rely on the benefit of hindsight to allege ineffective assistance of counsel." Regarding his actual innocence claim, the court found that defendant failed to submit affidavits from the potential witnesses he claimed could "testify that his interactions with the complaining witness were consensual."

¶ 14    The circuit court also found that defendant "failed to adequately establish a *Brady* violation" because there is "no allegation that reports were not tendered which would have given [defendant] the same information" as the undisclosed supplementary police report, which "references another report *** that fully outlines the line-up." And "[a]lthough [defendant] alleges that the supplementary report was withheld from trial counsel, [defendant] does not attach an affidavit from his trial counsel to this effect."

¶ 15    On March 18, 2022, defendant filed a notice of appeal from the circuit court's order dismissing his postconviction petition. Defendant attached three unsigned and unnotarized affidavits to his notice of appeal, which were not attached to his postconviction petition.[2] He included an affidavit of his plea counsel, Kathleen Yurchak,[3] in support of his *Brady* claim, and two affidavits in support of his actual innocence claim.

¶ 16    On March 25, 2022, this court entered an order declining to appoint counsel to represent defendant since his notice of appeal was untimely, but directing the Office of the State Appellate

---

[2] We will not consider these affidavits on appeal since "appellate review is generally restricted to what has been properly presented and preserved of record in the trial court." See *People v. Montgomery*, 327 Ill. App. 3d 180, 186 (2001).

[3] The report of proceedings indicates that Kathleen Fritz represented defendant during his plea hearing and defendant's postconviction petition identifies his plea counsel as "Katie Fritz."

Defender to "assist defendant with [the] filing of a late notice of appeal." On June 15, 2022, defendant filed a motion for leave to file a late notice of appeal, which this court granted on June 29, 2022.[4]

¶ 17                                                   ANALYSIS

¶ 18          The Act provides a remedy for criminal defendants whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). At the first stage of postconviction proceedings, the circuit court must independently review the petition within 90 days of its filing and dismiss the petition if the court determines that it is " 'frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001) and 725 ILCS 5/122-2.1(a)(2)). In making this determination, the court must take all well-pleaded allegations that are not positively rebutted by the record as true. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). A petition is frivolous or patently without merit if it " 'has no arguable basis either in law or in fact'. " *People v. Johnson*, 2021 IL 125738, ¶ 26 (quoting *Hodges*, 234 Ill. 2d at 16). At the first stage, a defendant need only allege sufficient facts to state a "gist" of a constitutional violation. *Edwards*, 197 Ill. 2d at 244. We review the circuit court's summary dismissal of defendant's postconviction petition *de novo. Hodges*, 234 Ill. 2d at 9. We "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." See *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 37.

---

[4] Defendant attached the same three unsigned and unnotarized affidavits to his motion for leave to file a late notice of appeal, and two additional police reports that were not attached to his postconviction petition.

¶ 19      Defendant argues that the circuit court erred in dismissing his postconviction petition because he stated a "gist" of a *Brady* violation. We disagree, as the allegedly undisclosed evidence is not "material" under *Brady*.

¶ 20      The State has a constitutional obligation to disclose evidence that is favorable to the accused and "material either to guilt or to punishment." See *Brady*, 373 U.S. 83 at 87. "A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." *People v. Jarrett*, 399 Ill. App. 3d 715, 727-28 (2010). "Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *People v. Beaman*, 229 Ill. 2d 56, 74 (2008). "It is not enough that the evidence might have helped defendant's case; 'rather, at the very least, to be considered material, the evidence must reasonably be expected to affect the outcome of the case.' " *People v. Dixon*, 228 Ill. App. 3d 29, 41 (1992) (quoting *People v. Velez*, 123 Ill. App. 3d 210, 217 (1984)). In the context of a guilty plea, *Brady* only protects against the suppression of exculpatory evidence. See *United States v. Ruiz*, 536 U.S. 622, 633 (2002); see also *People v. Gray*, 2016 IL App (2d) 140002, ¶ 13.

¶ 21      Defendant argues that he was "prejudiced by the State's failure to disclose the police report because whether D.L. was able to identify [defendant] as one of the perpetrators is a critical question for a finder of fact in an aggravated criminal sexual assault case" and that it is "arguable" that its nondisclosure "rendered his plea unknowing and involuntary." However, the factual basis for defendant's plea was DNA evidence linking him to the crime, not any positive identification of defendant by D.L. Moreover, the effect of the negative lineup results, if any,

would have been minimal, as it merely shows that D.L. was unable to identify defendant as one of her unknown attackers *nearly eight years after the assault*. Accordingly, the negative lineup results cannot "reasonably be expected to affect the outcome of the case," *i.e.*, defendant's decision to plead guilty. See *People v. Velez*, 123 Ill. App. 3d 210, 217-18 (1984) (undisclosed negative lineup results were not "material" to defendant's guilt where the witnesses were unable to identify defendant at trial and defendant failed to "demonstrate[ ] how such evidence would have been favorable to him"); see also *People v. Anderson*, 375 Ill. App. 3d 121, 148 (2007) (finding that defendant, who pled guilty to first degree murder, could not "meet the *Brady* materiality test because *** there is no reasonable probability that, had such evidence of systematic torture at Area 2 been disclosed to the defense, the result of defendant's proceedings would have been different").

¶ 22        Defendant further asserts that it is "arguable that [his] due process rights were violated" since the United States Supreme Court "has not explicitly addressed whether withholding exculpatory evidence, as opposed to impeachment evidence, during the pretrial plea bargaining process violates a defendant's constitutional rights, and the circuits are split on the issue." In *Ruiz*, 536 U.S. 622 at 633, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant," but did not address whether *Brady* requires pre-guilty plea disclosure of material exculpatory evidence. See also *Anderson*, 375 Ill. App 3d at 147 (noting that both Illinois courts and the Supreme Court have "yet to answer whether the due process clause requires *Brady* disclosures outside of the context of trial"). Even assuming *arguendo* that *Brady* applies to the guilty plea context, the undisclosed exculpatory evidence still must meet *Brady*'s materiality requirement. As previously discussed, the undisclosed evidence in this case is not

"material" to defendant's guilt. As such, defendant has failed to state an arguable *Brady* claim, and his postconviction petition was properly dismissed.[5]

¶ 23                                CONCLUSION

¶ 24          For the reasons set forth herein, we affirm the circuit court's summary dismissal of defendant's postconviction petition.

¶ 25          Affirmed

---

[5] Because we affirm the circuit court's judgment on this ground, we need not address the State's argument that defendant did not comply with section 122-2 of the Act (725 ILCS 5/122-2 (West 2020)) because he failed to "attach an affidavit from his trial counsel attesting that the supplemental report was never tendered" or explain his inability to obtain such an affidavit.